# FILED

## UNDER

# SEAL

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| HAND & NAIL HARMONY, INC. and NAIL ALLIANCE, LLC, | Case No. 2:14-cv-01106-RFB-CWH |
| Plaintiffs, | |
| v. | |
| GUANGZHOU COCOME COSMETICS CO. LTD.; GUANGZHOU BLUESKY CHEMICAL TECHNOLOGY CO., LTD.; GUANGZHOU QUANXIN HAIR DRESSING PRODUCT, CO. LTD.; DONGRI ELECTRICAL EQUIPMENT CO., LTD.; GUANGZHOU L&M COSMETICS CO., LTD., and; DOES 1-1000, inclusive, | **EX PARTE** TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER |
| Defendants. | |

Presently before the court is plaintiffs Hand & Nail Harmony, Inc's ("Harmony") and Nail Alliance, LLC's (collectively, "Plaintiffs") ex parte motion for a temporary restraining order and seizure order. Also before the court is plaintiffs' motion for a preliminary injunction.  The Court considers in this Opinion and Order only the Plaintiffs' request for a temporary restraining order and seizure order.

I.      **PROCEDURAL BACKGROUND**

On July 8, 2014, Plaintiffs filed a complaint against Guangzhou Cocome Cosmetics Co. Ltd., Guangzhou Bluesky Chemical Technology Co., Ltd., Guangzhou Quanxin Hair Dressing Product, Co. Ltd., Dongri Electrical Equipment Co., Ltd., Guangzhou L&M Cosmetics Co., Ltd. and Does 1-1000 ("Defendants") alleging, inter alia, trademark infringement under the Lanham Act, 15 U.S.C. § 1125.  Simultaneously with the filing of the Complaint, and based upon its claim of trademark infringement, the Plaintiffs filed an ex parte Emergency Motion for Temporary

Restraining Order ("TRO Motion") seeking a restraining order against the Defendants, a seizure order, a preliminary injunction, the substitution of custodians under the seizure, and expedited discovery.  On July 11, at a hearing on the TRO Motion, the Court denied the TRO Motion on the grounds primarily that the Plaintiffs had not yet identified an infringing product upon which they could base their claim.  See Transcript and Order of July 11, 2014.  The Court granted the Plaintiffs leave to file a supplemental memorandum providing further information for the Court's consideration.  The Court further ordered the Plaintiffs to file a $5,000 security at the time of the filing of any supplemental memorandum or before the filing of such memorandum.  On July 11, the Plaintiffs filed a $5,000 security bond.  On July 12, Plaintiffs filed a supplemental memorandum to its TRO Motion.

On July 15, 2014, the Court held another ex parte sealed hearing regarding Plaintiffs' TRO Motion.  The Court heard additional sworn testimony from, Steven Malynn, a witness of the Plaintiffs.  This testimony confirmed the location of the counterfeit goods.

## II.    FACTUAL BACKGROUND

Plaintiffs promote, distribute, and sell a line of soak-off gel polishes under the brand name "Gelish."  Plaintiffs claim products in this line are patented and patent-pending, including United States Trademark Registration Numbers 4,096,1 15 (Gelish standard character mark), 3,857,946 (Gelish design plus words), 4,473,557 (design mark), 4,473,558 (design mark), and other common law trademark and trade dress rights. Plaintiffs further claim to spend millions of dollars promoting Gelish products in the United States and throughout the world.  These Gelish products are sold in a distinctive bottle incorporating the "®" symbol.  Plaintiff claims these Gelish marks are instantly recognizable by consumers and associated exclusively with Harmony.

Plaintiffs also promote, distribute, and sell nail care lamps under the "18G" mark, for curing the Gelish nail polish.  This curing process facilitates the hardening of the nail gel. Plaintiffs claim the 18G lamps are distinctive and adorned with the same scroll work pattern that is registered as a design mark for the Gelish bottle.  Plaintiffs claim to own the rights to United States Trademark Registration Number 4,206,100 for "apparatus for drying/hardening nail

finishes, polishes and varnishes, including desiccate apparatus, drying apparatus, type nail dryers, drying apparatus and installations, and lamps," and that the "18G" mark is instantly recognizable and associated exclusively with the Plaintiffs.

At Cosmoprof North America 2014, a show held in Las Vegas, Nevada between July 13, 2014, and July 15, 2014, Plaintiffs claim to have observed on July 13, 2014 various individuals operating under different company names offering for sale and distribution merchandise strikingly similar to Plaintiff's Gelish products. In their supplemental memorandum the Plaintiffs specifically claim that the occupants of booth 24042 at the Cosmoprof North America 2014 trade show are offering for sale and distribution infringing nail gel bottles using the Plaintiffs' registered bottle design and heart shaped decorative design. See Supplemental Affidavit of David S. Kahn of July 13, 2014 ("Kahn Supp. Aff.") at ¶¶ 5-15. The signs on the booth indicate the company name Jiangyin Jinbao Plastic Sprayer Company, Jiangyin Jiangsu, China with a website of http://www.jbsprayer.com but this internet site does not appear to be operational according to the Plaintiffs. Id. Moreover, the individuals actually present in the respective booth on July 13, 2014 provided different contact information. According to Plaintiffs, one of these individuals was offering a business card to show participants which had the name Guangzhou L&M Cosmetics with a second name L&M Nail Gel with an address in Guangzhou, China.

The infringing product, according to Plaintiffs, is a nail polish bottle with a heart design confusingly similar to the heart design and bottle of Plaintiffs under the design patent US D651,521 S. See Design Patent attached as Exhibit A to this Opinion and Order. A photographic image of the alleged infringing product is attached to this Opinion. See Photographs submitted by Plaintiffs attached as Exhibit B. There also appears to be visible an advertising banner or sign with the counterfeit bottle. Id. After being contacted by the Plaintiffs on July 13 and July 14 regarding the alleged infringing bottles, it appears that Defendants partially removed the imitative bottles from the display in their booth but advertising signs still appear to be present.

III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 65 allows a court to issue a temporary restraining order when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. The Supreme Court has stated that courts must consider the following factors in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). All elements must be satisfied by the plaintiff. Id. at 19.

Section 34 of the Lanham Act, 15 U.S.C. § 1116(d), expressly empowers a court to grant an ex parte seizure order.  Such an order must set forth "(A) the findings of fact and conclusions of law required for the order; (B) a particular description of the matter to be seized, and a description of each place at which such matter is to be seized; (C) the time period, which shall end not later than seven days after the date on which such order is issued, during which the seizure is to be made; (D) the amount of security required to be provided under this subsection; and (E) a date for the hearing required under paragraph (10) of this subsection."  15 U.S.C. § 1116(d)(5).

The Lanham Act further requires for an ex parte seizure that a court find:

        a.) an order other than an ex parte order would not be adequate,

        b.) the party seeking the ex parte seizure application has not publicized it,

        c.) the matter to be seized will be in the place identified in the application, and

        d.) the party possessing the goods to be seized would otherwise move or hide such goods if this party were given prior notice of the seizure.

See 15 U.S.C. § 1116(d)(4)(B).

## IV.   **DISCUSSION**

The Court considers only in this Opinion the Plaintiffs' request for a temporary restraining order and seizure order.  For the reasons explained below, the Court grants the Plaintiffs' request for an ex parte temporary restraining order and seizure order.

### A.   **Success on the merits**

Plaintiffs are likely to succeed on the merits of their trademarks claims under 15 U.S.C. §§ 1114 and 1116.  First, Plaintiffs have a registered product design under Patent No. US651,521 S which represents a uniquely shaped bottle with an identifiable heart-shaped design bearing the name Gelish.  Exhibit A.  Second, newly identified Doe Defendants, Jiangyin Jinbao Plastic Sprayer Company and Guangzhou L&M Cosmetics or their agents are offering at the Cosmoprof North America 2014 trade show in Las Vegas for sale and distribution nail polish in bottles which are similar to and appear to imitate the bottle and designs of the Plaintiffs.  See image of imitation goods at Exhibit B.  These counterfeiting goods clearly are confusingly similar to the Plaintiffs' design and appear to imitate the Plaintiffs' above-reference registered design.  Thus, Plaintiffs are likely to be successful in demonstrating that the Defendants are offering counterfeit or confusingly similar goods for sale or distribution in violation of the Lanham Act.

### B.   **Irreparable Harm**

Absent an ex parte temporary restraining order and seizure order, Defendants' promotion, offers for sale, and/or sale of counterfeit and infringing products will result in irreparable injury to Plaintiffs.  The irreparable harm to Plaintiffs will occur in the form of loss of control over its intellectual property rights, loss of consumer goodwill, and interference with Plaintiff's ability to exploit its trademarks.  The Plaintiffs clearly have no connection to and thus control over the marketing and distribution of these counterfeit products by the Defendants.  Further, because many of the Defendants appear to have no presence in the United States, it may be difficult or impossible for Plaintiffs to enforce a monetary judgment.  The Plaintiffs will therefore suffer irreparable harm if the Defendants are not immediately restrained from the sale and distribution of these counterfeit goods.

### C.   <u>Balance of Hardship</u>

The harm to Plaintiffs in denying the requested temporary restraining order and seizure order outweighs the harm to Defendants' legitimate interests; and the balance of the harms therefore favors granting injunctive relief.  This conclusion stems from the fact that harm to the Plaintiffs by having the reputation of the quality of its product questioned through the distribution of products over which it has no quality control outweighs the hardship to the Defendants of the seizure of 80 to 100 bottles of nail polish bottles.  The Defendants will have an opportunity to have these items returned if they appear at the hearing and defend their product.  The Plaintiffs, however, will see the continued erosion of the reputation of their product unless a seizure takes place immediately.  The Plaintiffs have invested significant financial resources in the marketing of their products and in the maintaining the quality of their products.  This trade show and its products are viewed by thousands of participants.  Thus, the balance of hardships weighs in favor of the Plaintiffs and the seizure of the counterfeit goods.

### D.   <u>Public Interest</u>

The public interest weighs in favor of granting Plaintiffs the requested temporary restraining order and seizure order in order to protect the public from being confused by the sale of imitation goods appearing to be genuine Gelish products of the Plaintiffs.  The public is well served by removing counterfeit goods of questionable quality from the market, especially counterfeit goods which are likely to confuse the public about their origin and thus their quality. The public must be able to identify the company which produces specific goods in order to be able to make informed choices about the goods.  The counterfeit goods in Exhibit B impede the public's ability to do this.

### E.   <u>Necessity of Seizure</u>

An <u>ex parte</u> seizure is necessary to achieve the purposes of Section 32 of the Lanham Act, 15 U.S.C. § 1114.  The Defendants offering the counterfeit goods do not appear to have any physical address in the United States or any connection to business entity in the United States. The Defendants appear to be based in China and beyond the legal reach, generally, of United States' courts and their authority to impose meaningful remedies or sanctions for trademark

infringement in this country.  Moreover, even the addresses and identifying information for the Defendants in connection with sale of the counterfeit products at the booth at the Cosmoprof show is conflicting.  Based upon these facts, the Court finds that an <u>ex parte</u> seizure order is necessary to prevent the Defendants from removing or hiding the counterfeit goods if given notice.  The Court finds that it is likely that the Defendants would, upon notice, most likely simply return to China with the counterfeit goods and thus be able to reintroduce them from abroad into the market in this country.  Alternatively, the Defendants are likely to conceal or hide the counterfeit goods to avoid their scrutiny in the context of the Plaintiffs' claims.

**F.    Additional Findings**

The Court makes the following additional findings.  First, the Plaintiffs have not publicized their application for an <u>ex parte</u> temporary restraining order and seizure order.  They have filed their application <u>ex parte</u> and under seal.

Second, the Plaintiffs have deposited a $5,000 security bond with the Clerk of the Court as security for payment of any damages Defendants may be entitled to recover as a result of a wrongful seizure. The Court finds that this amount is sufficient security.

Third, the Court finds that the counterfeit goods identified in the Plaintiffs' Supplemental Memorandum will be found on July 15, 2014 at booth 24042 at the Cosmoprof North America 2014 trade show at the Mandalay Bay Hotel in Las Vegas, Nevada.  The Plaintiffs have provided images and a sworn affidavit supporting the existence and location of the counterfeit goods.

**V.    CONCLUSION**

The Court grants the Plaintiffs' request for a temporary restraining order and seizure order.  The specific details of these orders is outlined in the succeeding section.

**VI.    TEMPORARY RESTRAINING ORDER**

IT IS HEREBY ORDERED that Defendants, their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with

Defendants at booth 24042 at the Cosmoprof North America 2014 trade show at the Mandalay Bay Hotel in Las Vegas, Nevada are hereby temporarily restrained:

1. From importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the Gelish marks with a heart design as claimed in Patent No. US 651,521 S which is attached as Exhibit A to this Order.

This Temporary Restraining Order shall expire 10 days after its issuance unless Plaintiffs show good cause as to why it should be extended or Defendants consent to its extension.

A hearing on this Temporary Restraining Order is hereby set before this Court on July 23, 2014 at 10:30 a.m. in courtroom 7C of the United States Courthouse located at 333 Las Vegas Boulevard South, Las Vegas, Nevada.

**VII.    SEIZURE ORDER**

IT IS HEREBY ORDERED that Pursuant to 15 U.S.C. § 1116(d)(9), the United States Marshals or other Federal law enforcement officials or State or local law enforcement officers, are hereby authorized to use the reasonable force necessary to carry out the seizure as provided herein and Defendants shall surrender for seizure:

1. All counterfeit nail polish bottle products bearing any of the GELISH heart symbols whose image is documented in Exhibit B to this Opinion which are located at booth 24042 at the Cosmoprof North America 2014 trade show at the Mandalay Bay Hotel in Las Vegas, Nevada;

2. Any promotion material, including but not limited to signs, banners, brochures or pamphlets which promote the counterfeit nail polish bottles with the heart-shaped design described above;

3. To the extent they are readily identifiable by federal law enforcement at this same booth 24042 at Cosmoprof North America 2014, all documents, purchase orders, and records of any kind relating to the importation, purchase, acquisition, manufacture, insurance of, advertising, promotion, sale, offering for sale, distribution, and transfer of such counterfeit heart design nail polish bottle

products, including, but not limited to, computer disks, CD ROMs, computer hardware, and other magnetically or electronically stored information, as provided by 15 U.S.C. §1116(d)(i)(A);

IT IS HEREBY FURTHER ORDERD that

1. Only the property listed in this Order shall be seized and impounded, and due care shall he taken by the United States Marshals or other law enforcement officers, their appointed assistants to preserve and keep in good order Defendants' property and assets which are not related to the manufacture, packaging, importation, sale, or distribution of the alleged counterfeit products referred to above;

2. Plaintiffs shall pay to the United States Marshals the reasonable costs associated with the execution of this Order;

3. Anyone interfering with the execution of this Order may be subject to arrest by the United States Marshals or other Federal, State, or local law enforcement officers executing this Seizure;

4. The seizure shall take place on or about July 15, 2014 at Cosmoprof North America 2014, but not later than seven days after the issuance of this Order;

5. A hearing shall take place before this Court on July 23 2014, at 10:30 a.m. in courtroom 7C of the United States Courthouse located at 333 Las Vegas Boulevard South in Las Vegas, Nevada unless Plaintiffs show good cause for another date, or unless Defendants consent to another date. The hearing shall address (1) execution of the seizure of the allegedly counterfeit goods from Defendants; (2) Plaintiffs' requested entry of a preliminary injunction; (3) Plaintiffs' request to expedite discovery; and (4) Plaintiffs' request to be substitute custodians.

6.  The Court shall act as the custodian of any and all property seized pursuant to this Order.  The United States Marshal shall deliver the seized property along with the copy with his Return to the Court;

7.  The parties shall hold harmless the United States Marshals Service or other Federal, State, or local law enforcement officers executing this Order and their employees from any and all claims asserted in any court or tribunal arising from any acts, incidents, or occurrences in connection with the seizure and possession of any of the Defendants' property, including any third-party claims. Any and all products seized pursuant to this Order will be held by the Court in a secured storage facility. Absent any appearance in this case or claim in this case made by Defendants or Doe Defendants, all seized materials may be destroyed after one year from seizure.

Dated: July 15, 2014.



_____
RICHARD F. BOULWARE
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

US00D651521S

(12) **United States Design Patent**     (10) Patent No.:     **US D651,521 S**

Haile                                                 (45) Date of Patent:     ** **Jan. 3, 2012**

(54) **BOTTLE WITH TRANSPARENT WINDOW**

(76) Inventor: **Danny Lee Haile**, La Mirada, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/379,631**

(22) Filed: **Nov. 22, 2010**

### Related U.S. Application Data

(63) Continuation-in-part of application No. 29/350,948, filed on Nov. 25, 2009, now abandoned.

(30) **Foreign Application Priority Data**

May 25, 2010   (JP) ................................. 2010-012837

(51) **LOC (9) Cl.** ...................................... **09-01**
(52) **U.S. Cl.** .............. **D9/629**; D9/503; D9/658; D9/661
(58) **Field of Classification Search** .................. D9/418,
   D9/434, 500, 502–505, 516, 549–550, 558,
   D9/571, 574–575, 715, 718–719, 629, 655,
   D9/658, 661; D28/4, 7, 76–77,
   D28/99; 206/15.2, 15.3; 401/129; 215/379,
   215/381–382; 220/660, 669, 675
   See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D28,240 S | 2/1898 | Wellhouse |
| D68,779 S | 11/1925 | Gibson |
| D69,493 S | 2/1926 | Ciardi |
| D73,190 S | 8/1927 | Mezitis |
| D76,350 S | 9/1928 | Love et al. |
| D78,110 S | 3/1929 | Lancet |
| D121,927 S | 8/1940 | Miller, Jr. |
| 2,249,832 A | 7/1941 | Hubschman |
| D157,414 S | 2/1950 | Parentice |
| D162,721 S | 4/1951 | Ferraro |
| D168,416 S | 12/1952 | McGinnis |

| | | | |
|---|---|---|---|
| 3,337,901 A | | 8/1967 | Schefer et al. |
| 3,361,304 A | | 1/1968 | Thompson |
| 3,362,587 A | | 1/1968 | Postel |
| D214,159 S | * | 5/1969 | Hart et al. ...................... D9/503 |
| D259,153 S | * | 5/1981 | Valente ......................... D3/270 |
| D259,252 S | * | 5/1981 | Acker ............................ D4/116 |
| D298,514 S | | 11/1988 | Dole et al. |
| D330,859 S | | 11/1992 | Schaeffer |
| D332,919 S | * | 2/1993 | Turnbull et al. .............. D9/500 |
| D333,428 S | | 2/1993 | Gobe |
| D363,303 S | * | 10/1995 | Winston ........................ D18/18 |
| D363,375 S | * | 10/1995 | Arntsen ........................ D4/116 |
| D365,751 S | | 1/1996 | Hsu |
| D374,619 S | * | 10/1996 | Cook ............................ D9/629 |
| D399,658 S | | 10/1998 | Nosella |
| D422,219 S | | 4/2000 | Gobe |
| D429,154 S | * | 8/2000 | Chang ........................... D9/503 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 1202886 | 4/2004 |

(Continued)

*Primary Examiner* — Ian Simmons
*Assistant Examiner* — Dana L Sipos
(74) *Attorney, Agent, or Firm* — Feldman Gale, P.A.; Walter C. Frank

(57)               **CLAIM**

I claim the ornamental design for a bottle with transparent window, as shown and described.

### DESCRIPTION

FIG. **1** is a front elevation view of a bottle with transparent window showing my new design;
FIG. **2** is a rear elevation view thereof;
FIG. **3** is a right side elevation view thereof;
FIG. **4** is a top plan view thereof; and,
FIG. **5** is a bottom plan view thereof.

**1 Claim, 2 Drawing Sheets**





**US D651,521 S**

Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D431,779 | S | | 10/2000 | Nosella |
| D449,228 | S | * | 10/2001 | Nosella .......................... D9/500 |
| D467,138 | S | * | 12/2002 | Stanphill ....................... D7/710 |
| D468,529 | S | * | 1/2003 | Sabounjian ................... D3/273 |
| D476,901 | S | * | 7/2003 | Crawford ....................... D9/557 |
| D477,066 | S | | 7/2003 | Lonczak et al. |
| D479,134 | S | | 9/2003 | Murata |
| D487,703 | S | | 3/2004 | Orsomando |
| D488,064 | S | * | 4/2004 | Crawford ....................... D9/502 |
| D523,757 | S | * | 6/2006 | Garcia et al. .................. D9/629 |
| D538,479 | S | | 3/2007 | Martinez |
| D543,113 | S | | 5/2007 | Mongeon et al. |
| D543,114 | S | | 5/2007 | Mongeon et al. |
| D552,695 | S | * | 10/2007 | Mayers ......................... D21/629 |
| D556,040 | S | | 11/2007 | Kawashima et al. |
| D556,043 | S | | 11/2007 | Rabie |
| D560,508 | S | | 1/2008 | Lepoitevin |
| D563,798 | S | | 3/2008 | Gibson et al. |
| D568,753 | S | | 5/2008 | Woolf |
| D569,734 | S | * | 5/2008 | Imperato et al. ............... D9/560 |
| D598,289 | S | | 8/2009 | Taylor |
| D600,134 | S | | 9/2009 | Black |
| D607,728 | S | | 1/2010 | Berger et al. |
| D613,173 | S | | 4/2010 | Bansal |
| D617,206 | S | | 6/2010 | Shaw et al. |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| KR | 30-0266534 | 11/2000 |

* cited by examiner



FIG. 3

FIG. 2

FIG. 1



FIG. 4



FIG. 5

# EXHIBIT B



# JINBAO SPRAYER
## B24042



