1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

`UNITED STATES DISTRICT COURT

**DISTRICT OF NEVADA**

* * *

HAND & NAIL HARMONY, INC. and
NAIL ALLIANCE, LLC,

Plaintiffs,

v.

GUANGZHOU COCOME
COSMETICS CO. LTD.;
GUANGZHOU L&M COSMETICS
CO., LTD.; JINGYIN JINBAO
PLASTIC SPRAYER CO., LTD.;
EMERSON LIU; and DOES 3-1000,
inclusive,

Defendants.

Case No. 2:14-cv-01106-RFB-CWH

**PRELIMINARY INJUNCTION ORDER**

Presently before the court is plaintiffs Hand & Nail Harmony, Inc's ("Harmony") and Nail Alliance, LLC's (collectively, "Plaintiffs") motion for a preliminary injunction.

I.     **PROCEDURAL BACKGROUND**

On July 8, 2014, Plaintiffs filed a complaint against Guangzhou Cocome Cosmetics Co. Ltd., Guangzhou Bluesky Chemical Technology Co., Ltd., Guangzhou Quanxin Hair Dressing Product, Co. Ltd., Dongri Electrical Equipment Co., Ltd., Guangzhou L&M Cosmetics Co., Ltd. and Does 1-1000 ("Original Defendants") alleging, inter alia, trademark infringement under the Lanham Act, 15 U.S.C. § 1114.  Simultaneously with the filing of the Complaint, and based upon its claim of trademark infringement, the Plaintiffs filed an ex parte Emergency Motion for Temporary Restraining Order ("TRO Motion") seeking a restraining order against Original Defendants, a seizure order, a preliminary injunction, the substitution of custodians under the seizure, and expedited discovery.  On July 11, at a hearing on the TRO Motion, the Court denied the TRO Motion on the grounds primarily that the Plaintiffs had not yet identified an infringing product upon which they could base their claim.  See Transcript and Order of July 11, 2014.  The

Court granted the Plaintiffs leave to file a supplemental memorandum providing further information for the Court's consideration.  The Court further ordered the Plaintiffs to file a $5,000 security at the time of the filing of any supplemental memorandum or before the filing of such memorandum.  On July 11, the Plaintiffs filed a $5,000 security bond.  On July 12, Plaintiffs filed a supplemental memorandum to its TRO Motion.

On July 15, 2014, the Court held another <u>ex parte</u> sealed hearing regarding Plaintiffs' TRO Motion.  The Court heard additional sworn testimony from, Steven Malynn, a witness of the Plaintiffs.  This testimony confirmed the location of the counterfeit goods.  The Court granted the TRO Motion and seizure order.  <u>See</u> Order of July 15, 2014.  The Court declined to address the preliminary injunction or other matters at that time.  The Court also instructed Plaintiffs to amend their Complaint to include newly identified defendants.  That same day, pursuant to Order of July 15, 2014, the United States Marshals went to the location identified in the Order and seized from Defendants one L&M Poster and 147 Gel Air Bottles. <u>See</u> Exhibit A, Receipt of Items Seized, at 2.  At the time of the seizure, the Marshalls personally served process on Xiji Bao of the Jiangym Jinbao Plastic Sprayer Co., Ltd., Qionglin Zhang of the Guangzhon L&M Cosmetics Co., Ltd. aka L&M Nail Gel, and Emerson Liu.  The Marshals also served the individuals and companies present at the location where the seizure took place—booth 24042 at the Cosmoprof North America 2014 trade show in Las Vegas, Nevada—with a copy of the seizure order .

On July 22, 2014, Plaintiffs filed an amended complaint removing defendants Guangzhou Bluesky Chemical Technology Co., Ltd., Guangzhou Quanxin Hair Dressing Product, Co. Ltd., and Dongri Electrical Equipment Co., Ltd. and substituting in Jingyin Jinbao Plastic Sprayer Co., Ltd. and Emerson Liu for Does 1 and 2.  <u>See</u> First Amended Complaint at 1–2.  Presently, defendants are Guangzhou L&M Cosmetics Co., Ltd., Jingyin Jinbao Plastic Sprayer Co., Ltd., Emerson Liu, Guangzhou Cocome Cosmetics Co. Ltd., and Does 3-1000 ("Defendants").  <u>Id.</u>

At the motion hearing on July 23, 2014, the Court heard statements from Plaintiffs' counsel.  No Defendants appeared at this hearing.  The Court extended for good cause the temporary restraining order until August 8, 2014.  The Court denied Plaintiffs' Request for

Expedited Discovery.  The Court also denied Plaintiffs' Request for Substitution of Custodian, pursuant to 15 U.S.C. § 1116(d)(7), but granted the parties reasonable access to the material seized.  The Court indicated it was inclined to grant the Preliminary Injunction as to the served defendants Guangzhou L&M Cosmetics Co., Ltd., Jingyin Jinbao Plastic Sprayer Co., Ltd., and Emerson Liu.  As Guangzhou Cocome Cosmetics Co. Ltd. ("Cocome Cosmetics") had not been served, however, the Court directed Plaintiffs to attempt service and file an amended or supplemental motion for preliminary injunction before the Court would consider enjoining Cocome Cosmetics.

On July 28, Plaintiffs served by FedEx International Priority a copy of the Complaint, Summons, Restraining Order, and Amended Complaint.  <u>See</u> Supplemental Motion for Preliminary Injunction, Exhibit 7.  On August 6, 2014, Plaintiff's filed a Supplemental Motion for Preliminary Injunction as to Defendant Guangzhou Cocome Cosmetics Co., Ltd.  ("Supplemental Motion for Preliminary Injunction").  No Defendants have appeared in this case to date despite the above-noted service.

The Court presently considers the Preliminary Injunction against all four named Defendants.

## II.   <u>FACTUAL BACKGROUND</u>

Plaintiffs promote, distribute, and sell a line of soak-off gel polishes under the brand name "Gelish."  Plaintiffs claim products in this line are protected by trademark and patent, including United States Trademark Registration Numbers 4,096,1 15 (Gelish standard character mark), 3,857,946 (Gelish design plus words), 4,473,557 (design mark), 4,473,558 (design mark), and other common law trademark and trade dress rights. Plaintiffs further claim to spend millions of dollars promoting Gelish products in the United States and throughout the world.  These Gelish products are sold in a distinctive bottle incorporating the "®" symbol.  Plaintiffs claim these Gelish marks are instantly recognizable by consumers and associated exclusively with Nail Harmony.

Plaintiffs also promote, distribute, and sell nail care lamps under the "18G" mark for curing the Gelish nail polish.  This curing process facilitates the hardening of the nail gel.  Plaintiffs claim the 18G lamps are distinctive and adorned with the same scroll work pattern that is registered as a design mark for the Gelish bottle.  Plaintiffs own the rights to United States Trademark Registration Number 4,206,100 for "apparatus for drying/hardening nail finishes, polishes and varnishes, including desiccate apparatus, drying apparatus, type nail dryers, drying apparatus and installations, and lamps."

At Cosmoprof North America 2014, a trade show held in Las Vegas, Nevada between July 13, 2014, and July 15, 2014, Plaintiffs claim to have observed on July 13, 2014 various individuals operating under different company names offering for sale and distribution merchandise strikingly similar to Plaintiffs' Gelish products. In their supplemental memorandum, the Plaintiffs specifically claim that the occupants of booth 24042 at the Cosmoprof North America 2014 trade show were offering for sale and distribution infringing nail gel bottles using the Plaintiffs' registered bottle design and heart shaped decorative design.  See Supplemental Affidavit of David S. Kahn of July 13, 2014 ["Kahn Supp. Aff."] at ¶¶ 5–15.  The signs on the booth indicated the company name Jiangyin Jinbao Plastic Sprayer Company, Jiangyin Jiangsu, China with a website of http://www.jbsprayer.com but this internet site does not appear to be operational, according to the Plaintiffs.  Id.  Moreover, the individuals actually present in the respective booth on July 13, 2014 provided different contact information.  According to Plaintiffs, one of these individuals was offering a business card to Cosmoprof show participants which had the name Guangzhou L&M Cosmetics with a second name L&M Nail Gel with an address in Guangzhou, China.

The infringing product, according to Plaintiffs, is a nail polish bottle with a heart design confusingly similar to the heart design and bottle of Plaintiffs under the design patent US D651,521 S.  See Kahn Supp. Aff., Exhibit 1.  Plaintiffs photographed the alleged infringing products at the Cosmoprof show.  See Kahn Supp. Aff., Exhibits 3 and 5.  There also appeared to be visible an advertising banner or sign with the counterfeit bottle.  See Kahn Supp. Aff., Exhibit

4

4.  After being contacted by the Plaintiffs on July 13 and July 14 regarding the alleged infringing bottles, it appeared that Defendants removed some the imitative bottles from the display in their booth, but advertising signs remained.

In addition to the products and advertisements in the booth, Plaintiffs collected on the Cosmoprof show floor advertising material distributed by Cocome Cosmetics representatives. See Supplemental Motion for Preliminary Injunction, Exhibit 5.  This material includes pictures of nail gel bottles labeled "gelish," including the color window, and otherwise nearly identical to authentic Gelish nail gel bottles.  Id.  Aside from these pictures, the advertisement uses language such as "CCO Gelish Soak-off UV&LED Series," "Gelish Soak-Off UV&LED Gel Polish," "Gelish Soak-Off UV&LED Base Gel," and "Gelish Soak-Off UV&LED Top Coat."  Id. Further, Plaintiffs also visited Cocome Cosmetics' "alibaba.com" sales website, where Cocome Cosmetics offers for sale apparently counterfeit "gelpolish" bottles described in the English language and priced in United States dollars.  See Supplemental Motion for Preliminary Injunction, Exhibit 6.  Here, Cocome Cosmetics includes "CCO Gelish" among their list of brands.  Id.

## III.    LEGAL STANDARD

Courts "have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of [Title 15]."  15 U.S.C. § 1116.  Preliminary injunctions require notice to the adverse party.  Fed. R. Civ. P. 65(a)(1). "Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

"A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary

relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction."  Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

## IV.   **DISCUSSION**

For the reasons explained below, the Court grants the Preliminary Injunction against Guangzhou L&M Cosmetics Co., Ltd., Jingyin Jinbao Plastic Sprayer Co., Ltd., Emerson Liu, and Cocome Cosmetics.

### A.   **Success on the merits**

Plaintiffs have stated eight causes of action against Defendants.  First Amended Complaint at 16–23.  The first count is for "Trademark Infringement and Counterfeiting in Violation of 15 U.S.C. §§ 1114, 1116(d)."  Id.  Plaintiffs are likely to succeed on the merits of this claim regarding infringing bottles of nail gel.

Section 1114(1)(a) prohibits, the "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  "[A] claim for trademark infringement requires only two elements: (1) ownership of a trademark, and (2) that the plaintiff show a likelihood of confusion through the balancing of eight factors."  Wells Fargo, 758 F.3d at 1072.

First, Plaintiffs appear to own trademarks protecting their Gelish bottle designs.  Plaintiffs claim to own the Gelish mark, which is protected by multiple federal trademark registrations, including United States Trademark Registration Numbers 4,096,115 (Gelish standard character mark), 3,857,946 (GELISH design plus words) for use in nail care applications and 4,473,557 (design mark) and 4,473,558 (design mark), for the unique three-dimensional configuration of a bottle bearing a solid background with a scroll work pattern thereon.  First Amended Complaint

at 5; <u>see</u> Plaintiffs' Emergency Motion for Temporary Restraining Order, Exhibits 2 and 3.

Plaintiffs' bottle design is also protected by patents D656,824 and D651,521.

Second, the Defendant's use of the mark is likely to cause confusion.  To determine the

likelihood of consumer confusion, courts consider eight factors:
> (1) the "similarity of the marks";
> (2) the "strength of the mark" that has allegedly been infringed;
> (3) "evidence of actual confusion";
> (4) the relatedness or "proximity" of the goods;
> (5) the "normal marketing channels" used by both parties
> (6) the "type of goods and the degree of care likely to be exercised
> by the purchaser"
> (7) the alleged infringer's "intent in selecting the mark"
> (8) evidence that "either party may expand his business to compete
> with the other."

<u>Hokto Kinoko Co. v. Concord Farms, Inc.</u>, 738 F.3d 1085, 1095–96 (9th Cir. 2013)

(quoting <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348 (9th Cir. 1979), <u>abrogated in part on

other grounds by</u> <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792 (9th Cir. 2003)).

Application of these <u>Sleekcraft</u> factors to this case supports a finding of confusion regarding

imitation or counterfeit Gelish nail gel bottles.

**Similarity.**  Defendants offered nail gel in bottles at the Cosmoprof North America 2014

trade show in Las Vegas for sale and distribution.  The Court has had the opportunity to examine

several of the bottles and the promotional display seized from the Cosmoprof show floor.  <u>See</u>

Photographs of Sample of Bottles Seized attached as Exhibit B.  The use of the heart, color

window, and scroll lines, as well as the shape of the bottle, result in bottles of nail gel that are

very similar to and appear to imitate the Plaintiffs' bottle and designs.  The bottles of nail gel in

the Cocome Cosmetics print materials and websites also are very similar to Plaintiffs' bottles.

<u>See</u> Supplemental Motion for Preliminary Injunction, Exhibits 5 and 6.

**Strength.**  Strength is measured by considering commercial and conceptual strength.

<u>Network Automation, Inc. v. Advanced Sys. Concepts, Inc.</u>, 638 F.3d 1137, 1149 (9th Cir. 2011).

Commercial strength—based on actual marketplace recognition—is "an evidence-intensive

inquiry, unnecessary at the preliminary injunction stage.  <u>Id.</u> at 1149–50.  "Conceptual strength

involves classification of a mark along a spectrum of generally increasing inherent distinctiveness

as generic, descriptive, suggestive, arbitrary, or fanciful." Id. at 1149 (internal quotation marks omitted). "Gelish" is not a regular word, and may possibly be, as Plaintiffs suggest, classified as "fanciful," but could also be understood to mean "gel-ish," or "like a gel." However, Plaintiffs' "Gelish" mark is at least "suggestive," because it "requires a mental leap from the mark to the product." Id. at 1150. Furthermore, registration alone strongly supports a determination of distinctiveness of conceptual strength. Id. at 1149 (citing Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1199 (9th Cir. 2009) ("There can be no serious dispute with the principle that a federal trademark registration of a particular mark supports the distinctiveness of that mark, because the PTO should not otherwise give it protection. Registration alone may be sufficient in an appropriate case to satisfy a determination of distinctiveness.")). In sum, the strength of Plaintiffs' trademark weighs in favor of confusion.

**Proximity and Marketing Channels.** In the present case, these two factors are addressed by the same set of facts. First, "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." Network Automation, 638 F.3d at 1150. Second, "[c]onvergent marketing channels increase the likelihood of confusion." Id. at 1151 (quoting Sleekcraft, 599 F.2d at 353). Here, Defendants' and Plaintiffs' goods are entirely interchangeable, at least nominally, if not in terms of quality, and both products were being sold to the exact same set of consumers: attendees of the Cosmoprof 2014 trade show floor. In addition to the trade show floor sales channel, Plaintiffs obtained an advertisement email from "Wade from COCOME gel polish factory" offering to sell what appears to be imitation Gelish products. Affidavit of Danny Haile, Exhibit 1. This email was sent as a "blast" to all "Harmony's worldwide network of distributors." Affidavit of Danny Haile at ¶ 26. This factor weighs in favor of confusion.

**Type of Goods.** In analyzing this factor, it is relevant whether the customer is looking for "cheap, interchangeable" products. Network Automation, 638 F.3d at 1152. It is also relevant to consider the type of customer in addition to the nature of the goods. Id. In this case, there is evidence that the products were marketed at both professional trade shows and on the internet.

While some professionals at a trade show may exercise some care in reviewing products, it has been recognized that internet consumers are more likely to use less care in their review of products.  Id.  Moreover, the website of the company to whom the Cosmoprof booth was registered is inactive, making the company "difficult or impossible to track down."  For these reasons, this factor also tips in favor of confusion.

**Intent.**  Here, a few facts suggest intent to deceive.  First, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."  Network Automation, 638 F.3d at 1153 (quoting Sleekcraft, 599 F.2d at 348).  Here, as discussed above, the imitation bottles are very close copies of Gelish bottles.

Second, Defendants have obfuscated the imitative nature of their products by use of the Gelish name and images.  For example, in a marketing email, Cocome states "Attached is CCO Gelish," and includes a picture of an imitation product.  Affidavit of Danny Haile, Exhibit 1. Similarly, L&M provides a "Gelish Color Chart" on its website to assist purchasers in selecting corresponding colors for their merchandise.  First Amended Complaint at 15.  And Cocome Cosemetics, in their print materials, display bottles bearing text and designs essentially identical to authentic Gelish products and use the word "Gelish" in their product titles.  Supplemental Motion for Preliminary Injunction, Exhibit 5.

**Evidence of Actual Confusion.**  Plaintiffs have made general allegations of customer confusion regarding imitation Gelish products.  Affidavit of Danny Haile at ¶ 35.  However, Plaintiffs provide no evidence linking this confusion to Defendants.  As neither party has provided evidence regarding actual confusion in the present matter, the Court concludes this factor should be given no weight presently.  See Network Automation, 638 F.3d at 1151 (stating that while actual confusion may be an important factor, "its importance is diminished at the preliminary injunction stage of the proceedings.").

**Expansion.**  "Where two companies are direct competitors, this factor is unimportant." Id. at 1153.  As discussed above, Plaintiffs and Defendants sell similar or same products, in the

same market, at the same trade shows, to the same customers and distributors.  Therefore, the Court need not give weight to this factor at this time.

Applying the <u>Sleekcraft</u> factors to the facts available, Plaintiffs appear likely to succeed in proving confusion regarding imitation or counterfeit Gelish nail gel.  Thus, given their registered trademarks, Plaintiffs, consequently, are likely to succeed on the merits of their trademark infringement cause of action, under 15 U.S.C. §§ 1114, 1116(d).  Because of this finding, the Court need not consider Plaintiffs' other causes of action for the purposes of a preliminary injunction at this time.

It must be noted that Plaintiffs have provided inadequate evidence supporting a finding of confusion regarding the 18G LED Curing Lamps.  Plaintiffs do claim a registered Trademark for the 18G lamp, no. 4,206,100, but have included no substantial evidence of potentially confusing counterfeit or imitation 18G merchandise from Defendants.  <u>See</u> First Amended Complaint at 7–10; Supplemental Motion for Preliminary Injunction at 4.  No imitation lamps were alleged on the trade show floor nor do any imitation lamps appear in the submitted print, email, or online advertising.  <u>See</u> Supplemental Motion for Preliminary Injunction, Exhibits 6 and 7; Kahn Supp. Aff., Exhibits 3–5.  Consequently, it is not presently possible for this Court to conclude Plaintiffs are likely to succeed on their claims regarding the 18G lamp.

### B.   <u>Irreparable Harm</u>

Irreparable harm is not presumed given likelihood of success on the merits, rather preliminary injunctions in copyright and trademark cases require the Plaintiff establish the likelihood of irreparable harm.  <u>Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.</u>, 736 F.3d 1239, 1249 (9th Cir. 2013).  Here, Plaintiffs have met this burden.  Absent a temporary restraining order, Defendants' promotion, offers for sale, and/or sale of counterfeit and infringing products will result in irreparable injury to Plaintiffs.  The irreparable harm to Plaintiffs will occur in the form of loss of control over its intellectual property rights, loss of consumer goodwill, loss of sales, and interference with Plaintiffs' ability to exploit their trademarks.  The

Plaintiffs clearly have no connection to and thus control over the marketing and distribution of these counterfeit products by the Defendants.

Importantly, while these harms may in some other situations be addressable via legal remedies, here, because many of the Defendants appear to have no presence in the United States, it may be difficult or impossible for Plaintiffs to enforce a monetary judgment.  In fact, none of the Defendants has responded to the summons to attend a hearing or responded to motions.  There is little reason to believe at this time that Defendants will pay heed to any money damages awarded.  The Plaintiffs will therefore suffer irreparable harm if the Defendants are not immediately restrained from the sale and distribution of these counterfeit goods at trade shows and online.

### C.      Balance of Hardship

The harm to Plaintiffs in denying the requested preliminary injunction outweighs the harm to Defendants' legitimate interests; and the balance of the harms therefore favors granting injunctive relief.  Here, the Plaintiffs have invested significant financial resources in the marketing of their products and in the maintaining the quality of their products.  The Plaintiffs risk substantial damage to reputation and good will by having the quality of its product questioned because of the distribution of products over which it has no quality control.  This Court issued a temporary restraining order to halt the distribution of infringing products during the trade show, and absent a continuation of these restrictions, the Plaintiffs will see the continued erosion of the reputation of their product unless a preliminary injunction is imposed. Furthermore, the Plaintiff stands little chance of recovery at law after any future harm.

Any harm suffered by the Defendants due to this injunction, on the other hand, is first and foremost speculative, as Defendants have alleged no harms they would suffer should this injunction issue.  Thus, the balance of hardships weighs in favor of the Plaintiffs and the issuance of a preliminary injunction.

### D.     Public Interest

While the previous factors require examination of the parties to the case, "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties." League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 766 (9th Cir. 2014). The public interest weighs in favor of granting Plaintiffs the requested preliminary injunction in order to protect the public from being confused by the sale of imitation goods appearing to be genuine Gelish products of the Plaintiffs.  The public is well served by removing counterfeit goods of questionable quality from the market, especially counterfeit goods which are likely to confuse the public about their origin and thus their quality and safety.  The public must be able to identify the company which produces specific goods in order to be able to make informed choices about the goods.  Defendants' strikingly similar goods impede the public's ability to do this.

## V.     CONCLUSION

For the reasons above, the Court grants the Plaintiffs' request for a preliminary injunction with regards to defendants Guangzhou L&M Cosmetics Co., Ltd., Jingyin Jinbao Plastic Sprayer Co., Ltd., Emerson Liu, and Cocome Cosmetics with regards to imitation or counterfeit gel polish bottles and products.  The specific details of the preliminary injunction are outlined in the succeeding section.

## VI.     ORDER FOR PRELIMINARY INJUNCTION

**IT IS HEREBY ORDERED** that defendants Guangzhou L&M Cosmetics Co., Ltd., Jingyin Jinbao Plastic Sprayer Co., Ltd., Emerson Liu, and Guangzhou Cocome Cosmetics Co. Ltd., their respective officers, directors, employees, agents, subsidiaries, distributors, all persons who may have been in active concert or participation with Defendants at booth 24042 at the Cosmoprof North America 2014 trade show at the Mandalay Bay Hotel in Las Vegas, Nevada,

and all persons in active concert or participation with the Defendants having notice of this Preliminary Injunction are hereby enjoined, pending termination of this action in the following ways or manner:

1. From importing, advertising, promoting, offering to sell, selling, distributing, or transferring any nail products bearing the term "gel" or "gelish" and any nail products bearing any of the Gelish Marks, as claimed in Patent No. US 651,521 S and Trademarks No. 3,857,946, 4,096,115, 4,473,557, and 4,473,558, or confusingly similar marks.

2. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (a) any nail products, not manufactured or distributed by Plaintiff, bearing the term "gel" or "gelish" or the Gelish Marks, or any confusingly similar trademarks; or (b) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the term "gel" or "gelish" or Gelish Marks, or any confusingly similar trademarks.

3. From using the Gelish Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them.

**IT IS FURTHER ORDERED** that defendants Guangzhou L&M Cosmetics Co., Ltd., Jingyin Jinbao Plastic Sprayer Co., Ltd., and Emerson Liu; their respective officers, directors, employees, agents, subsidiaries, distributors; all persons in active concert or participation with Defendants at booth 24042 at the Cosmoprof North America 2014 trade show at the Mandalay Bay Hotel in Las Vegas, Nevada; and all persons in active concert or participation with the Defendants having notice of this Preliminary Injunction shall preserve and/or continue to preserve copies of all their records relating to the production or distribution of nail products bearing the term "gel" or "gelish" or the Gelish marks and shall continue to take all steps necessary to retrieve computer files relating to these products that may have been deleted before the entry of this Preliminary Injunction.

**IT IS FURTHER ORDERED** that this Preliminary Injunction shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties.

Dated: September 26, 2014.



_____
RICHARD F. BOULWARE
UNITED STATES DISTRICT JUDGE

# Exhibit A



UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| HAND & NAIL HARMONY, INC. and NAIL ALLIANCE, LLC,<br><br>     Plaintiffs,<br><br>vs.<br><br>GUANGZHOU COCOME COSMETICS CO. LTD, et al.<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

2:14-cv-01106-RFB-CWH

RECEIPT OF ITEMS SEIZED

DATED: 15 July 2014

Items seized by the United States Marshal pursuant to the Court's Order dated July 15, 2014, were turned over to the Clerk of Court on Tuesday, July 15, 2014.

LANCE S. WILSON, CLERK

By: _____

    Amber Freeman, Deputy Clerk

DATED: ___7/15/14___



1



# RECEIPT FOR MERCHANDISE SEIZED

## UNITED STATES DISTRICT COURT, DISTRICT OF NEVADA

### CASE NO. 2:14-CV-01106-RFB-CWH

HAND & NAIL HARMONY, INC., AND NAIL ALLIANCE, LLC, Plaintiffs

vs.

GUANGZHOU COCOME COSMETICS CO. LTD.; GUANGZHOU BLUESKY CHEMICAL TECHNOLOGY CO., LTD.; GUANGZHOU QUANXIN HAIR DRESSING PRODUCT, CO. LTD.; DONGRI ELECTRICAL EQUIPMENT CO., LTD.; GUANGZHOU L&M COSMETICS CO., LTD., and; DOES 1-1000, inclusive, Defendants

NAME OF COMPANY REPRESENTATIVE: _Steven R. Malynn_

NAME OF COMPANY OR ORGANIZATION: _Hand & Malynn_

ADDRESS AND OTHER CONTACT INFORMATION FOR COMPANY/ORGANIZATION:

ITEMS SEIZED:

| ITEM | # / AMOUNT | ADDITIONAL DESCRIPTION OR NOTES |
|---|---|---|
| L & M Poster | 1 | (2 Pieces) |
| Gel Art Bottles | 138 | in 12 piece packages |
|  | 147 | (13 boxes) |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DATED this _15th_ day of July, 2014.

_Steven R. Malynn_

Steven R. Malynn

_Plaintiffs_
_Hand & Nail Harmony, Inc. and Nail Alliance, LLC_

# Exhibit B





